UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RAPIDDEPLOY, INC.,<br>*Plaintiff*<br><br>v.<br><br>RAPIDSOS, INC. and<br>SAMANTHA MURRELL,<br>*Defendants* | §<br>§<br>§<br>§   Case No. 1:22-cv-00612-LY<br>§<br>§<br>§ |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff RapidDeploy, Inc.'s Emergency Motion for Remand and for Award of Attorneys' Fees and Costs, filed June 24, 2022 (Dkt. 7); Defendant RapidSOS, Inc.'s Motion to Dismiss Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, filed June 24, 2022 (Dkt. 9); Plaintiff RapidDeploy, Inc.'s Motion for Jurisdictional Discovery, filed July 11, 2022 (Dkt. 30); Defendant RapidSOS, Inc.'s Request for Judicial Notice, filed July 15, 2022 (Dkt. 35); and the associated response and reply briefs.

The District Court referred the motions to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 24, 36.

### I.   Background

Plaintiff RapidDeploy, Inc. is a Delaware corporation with its principal place of business in Austin, Texas. Dkt. 4 at 2. RapidDeploy asserts that Defendant RapidSOS, Inc., a Delaware corporation with its principal place of business in New York, is a "direct competitor." Dkt 4-6

1

(Plaintiff's Second Amended Petition) ¶¶ 8, 20. Specifically, RapidDeploy alleges that both companies provide "technology and data to augment and improve responses to 9-1-1 emergency calls" to "the same categories of customers." *Id.* ¶ 20. RapidDeploy asserts that it had a prior business relationship with RapidSOS that ended in 2019. *Id.* ¶ 21.

In March 2022, RapidSOS's Chief Operating Officer José Mejía allegedly approached RapidDeploy's leadership about RapidSOS acquiring RapidDeploy. *Id.* ¶ 22. Following initial discussions, however, "it became clear no agreement could be reached." *Id.* ¶ 23. One week later, the following conversation allegedly took place between Mejía and RapidDeploy's Chief Operations Officer James Mitchell:

> Mitchell reiterated RapidDeploy's belief that RapidSOS's terms proposed were unacceptable and thus he did not see a path forward with respect to an acquisition by RapidSOS of RapidDeploy. Mejía stated that this was "unfortunate" and that RapidSOS would now have to "shift strategy." Mejía then threated Mitchell that he would make sure RapidDeploy would never be successful, that he knew an executive at one of RapidDeploy's strategic partners and largest investors, and that Mejía was "a very powerful person" who could make life very difficult for RapidDeploy. And very specifically, Mejía stated that he intended to hurt RapidDeploy by hiring away RapidDeploy's best people.

*Id.* ¶¶ 25-26.

RapidDeploy asserts that RapidSOS attempted to "poach" one of its employees within the next week, without success. *Id.* ¶¶ 27-28. In May 2022, Defendant Samantha Murrell informed RapidDeploy that she would resign; she later told the company that she had accepted a management position with RapidSOS, where she continues to work. *Id.* ¶ 58; Dkt. 9 at 5. Murrell began working for RapidDeploy in February 2019 and, "like most of RapidDeploy's employees," worked remotely. *Id.* ¶ 30. It is undisputed that Murrell is a resident of Montana and did not live in Texas during her employment with RapidDeploy. Dkt. 9 at 5; Dkt. 28 at 10.

On May 9, 2022, RapidDeploy filed this suit in state court, asserting claims of breach of contract against Murrell and tortious interference with contract against RapidSOS. *RapidDeploy, Inc. v. Murrell*, No. D-1-GN-22-002590 (353rd Dist. Ct., Travis Cnty., Tex. May 9, 2022). RapidDeploy filed an application for a temporary restraining order, temporary injunction, and permanent injunction, asking the state court to enjoin Murrell and RapidSOS from breaching and tortiously interfering with her employment agreement (the "Contract") and using or disclosing proprietary information. Dkt. 4-6 ¶¶ 76, 87. RapidDeploy also asked the court to instruct Murrell and RapidSOS to return and delete access to any proprietary information or property. *Id.*

Counsel for Murrell appeared in the state court action on her behalf, and she does not contest jurisdiction. Dkt. 4 at 2. Counsel for RapidSOS, however, filed a special appearance, asserting that the court lacked personal jurisdiction over RapidSOS. *Id.* The state court entered a temporary restraining order against Murrell and RapidSOS and ordered expedited discovery. Dkt. 7 at 2. On June 23, 2022, Murrell removed the case to this Court pursuant to 28 U.S.C. § 1332, asserting that RapidSOS was fraudulently joined and should be disregarded for diversity purposes. Dkt. 1 at 4. Murrell filed an amended notice of removal on June 24, 2022. Dkt. 4. At the time of removal, RapidSOS's special appearance and RapidDeploy's request for additional jurisdictional discovery were pending before the state court. Dkt. 7 at 10.

## II.  Order of Consideration

When presented with challenges to both personal jurisdiction and subject matter jurisdiction, courts have discretion over the order of consideration. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("We hold that in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy."). The Fifth Circuit has held that courts may consider a motion challenging personal jurisdiction before a motion to remand based on "judicial economy" if "federal intrusion into state courts' authority is minimized." *Alpine*

*View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) (citation omitted). Thus, the Court has discretion to consider personal jurisdiction before subject matter jurisdiction because the personal jurisdiction inquiry does not raise "difficult questions of state law." *Id.* (quoting *Ruhrgas AG*, 526 U.S. at 586).

In the interest of judicial economy, the Court first considers the motion to dismiss for lack of personal jurisdiction. Disposition of that motion results in the dismissal of the non-diverse defendant and thereby renders the motion to remand moot because no non-diverse parties remain.

### III.  Motion to Dismiss Under Rule 12(b)(2)

The parties dispute whether the Court has specific personal jurisdiction over RapidSOS. RapidSOS argues that RapidDeploy's allegations, even if true, are insufficient to establish personal jurisdiction because "not a single allegation in the Petition reflect[s] actions that RapidSOS took in Texas related to Ms. Murrell's hire." Dkt. 9 at 12. RapidDeploy responds that RapidSOS "engaged in a series of contacts and activities directed at RapidDeploy in Texas, all of which collectively support the exercise of specific personal jurisdiction." Dkt. 28 at 8.[1]

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. A court generally may not rule on the merits of a case without first determining that it has personal jurisdiction over the parties. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). If the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. *Halliburton Energy Servs., Inc. v.*

---

[1] RapidDeploy asserts that "RapidSOS may also be subject to general personal jurisdiction in Texas," but that it "will not burden the Court with additional briefing on the issue of general jurisdiction." Dkt. 28 at 14 n.5. Because RapidDeploy did not brief the general jurisdiction issue, the Court does not address it.

4

*Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). In such circumstances, the court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016) (citation omitted).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101.

A defendant's contacts with the forum state may give rise to general or specific jurisdiction. *Id.* Specific jurisdiction exists "when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Halliburton*, 921 F.3d at 539 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)). The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

1. whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;

2. whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

3. whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.* (citation omitted).

The first factor requires the plaintiff to demonstrate that the defendant had sufficient minimum contacts with the forum. For there to be minimum contacts to confer specific jurisdiction, "a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.'" *Carmona*, 924 F.3d at 193 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). This "requirement is the 'constitutional touchstone' of personal jurisdiction," and "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (quoting *Burger King*, 471 U.S. at 474). To establish personal jurisdiction in a forum based on the "effects" of tortious conduct, a plaintiff must establish that the effects connect the defendant to the forum state, not just to the plaintiff. *Walden v. Fiore*, 571 U.S. 277, 287 (2014).

**B. Analysis**

RapidDeploy argues that the following contacts support personal jurisdiction: (1) communications between RapidDeploy and RapidSOS; (2) the Contract, which includes a Texas forum-selection and choice-of-law clause; (3) RapidSOS's specific intent to harm RapidDeploy in Texas; and (4) RapidSOS's "other contacts with Texas, including conducting business, serving customers, marketing its products, among others." Dkt. 28 at 8-9. The Court concludes that these contacts are insufficient to establish a prima facie case for personal jurisdiction.

**1. Communications Between the Parties**

First, RapidDeploy alleges that the companies were in negotiations for RapidSOS to purchase RapidDeploy and that hiring Murrell was part of RapidSOS's plan to harm RapidDeploy after negotiations soured. But RapidDeploy fails to tie these negotiations to Texas in any meaningful way. RapidDeploy does not identify Texas as the location of any meetings or phone calls.[2] Rather, the Affidavit of James Mitchell, which RapidDeploy attached in support of its response, establishes that the only meeting took place in Virginia. Dkt. 28-2 ¶ 10. The fact that RapidDeploy was headquartered in Texas during these negotiations is insufficient to support personal jurisdiction because the "plaintiff cannot supply 'the only link between the defendant and the forum.'" *Carmona*, 924 F.3d at 194 (quoting *Walden*, 571 U.S. at 285).

Even if RapidDeploy had tied these communications to Texas, communications between a defendant and a plaintiff residing in the forum often have been found insufficient to establish minimum contacts. *See, e.g.*, *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding communications with Texas insufficient because they rested on nothing but "the mere fortuity" that plaintiff happened to be a resident of the forum); *Patterson*, 764 F.2d at 1147 (finding numerous telephone calls from defendant to forum during course of performance of contract insufficient to support specific jurisdiction). In *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999), the court distinguished cases in which courts found personal jurisdiction lacking,

---

[2] RapidSOS asks the Court to take judicial notice of three RapidDeploy employees' LinkedIn webpages as evidence of their work locations. Dkt. 35. A court may take judicial notice of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001) (quoting FED. R. EVID. 201(b)). The Fifth Circuit has declined to take judicial notice of private internet sources. *See, e.g.*, *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022). LinkedIn, like the private internet archive considered by the Fifth Circuit, is not "inherently or self-evidently reliable." *Id.* Therefore, the Court declines to take judicial notice of the webpages.

where "communications with the forum did not actually give rise to a cause of action," from cases in which "the actual content of communications with a forum gives rise to intentional tort causes of action." *Id.* Here, the communications between RapidSOS and RapidDeploy, a forum resident, did not give rise to this cause of action; rather, the tortious interference claim arises out of Murrell's employment with RapidSOS.

### 2. The Contract

With respect to RapidDeploy's second argument, the Contract itself is insufficient to establish personal jurisdiction over RapidSOS, a non-signatory. RapidDeploy argues that the connection to Texas is "obvious" because the Contract "includes a clear Texas forum-selection and choice of law clause." These facts alone, however, would be insufficient to establish personal jurisdiction even if RapidSOS were a party to the Contract. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (holding that "the presence of a choice-of-law clause is not sufficient in itself to establish personal jurisdiction"); *see also Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 538-39 (S.D. Tex. 2017) (discussing the significance of choice-of-law and forum-selection clauses in the personal jurisdiction analysis). Instead, the Contract should be considered in the context of the tortious interference claim, discussed below.

### 3. Intent to Cause Harm in Texas

RapidDeploy relies on *Seiferth v. Helicopteros Atuneros, Inc.* to support its argument that RapidSOS's intent to cause harm in Texas creates personal jurisdiction here. 472 F.3d 266, 271 (5th Cir. 2006) (stating that a "tortfeasor's presence in [the forum] is not required; causing an injury that occurs in the state is sufficient"). After *Seiferth*, the Supreme Court "clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable." *Sangha*, 882 F.3d at 103 (citing *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). In *Walden,* the Court reaffirmed that "an injury is jurisdictionally relevant only insofar as it shows that the defendant

8

has formed a contact with the forum State." The Court reasoned that the defendant's knowledge that a party will suffer foreseeable harm in the forum "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. The proper question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Whether RapidSOS harmed RapidDeploy in Texas is relevant only to the extent that RapidSOS's conduct connects it to Texas, not just to RapidDeploy.

Under Fifth Circuit precedent involving tortious interference claims, RapidDeploy has not alleged sufficient contacts with the forum. First, allegations of tortious interference with a forum resident's contractual rights alone are insufficient to establish specific personal jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001). In *Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763, 772 (5th Cir. 2001),[3] the plaintiff argued that it had presented prima facie evidence of personal jurisdiction because the defendant committed an intentional tort against the plaintiff with knowledge that plaintiff resided in Texas. The Court found that there was no evidence that the defendant "expressly aimed its allegedly tortious activities at Texas, nor is there evidence that [defendant] knew the brunt of [plaintiff's] injury would be felt there." *Id.* The Court noted that the other party to the contract was not a Texas resident, the contractual relationship was negotiated outside Texas, contemplated no performance in Texas, was

---

[3] RapidDeploy relies on the following three-factor test derived from *Southmark* for evaluating personal jurisdiction in tortious interference claims: (1) where the agreement allegedly interfered with was negotiated; (2) whether the agreement was made or to be performed in Texas or governed by Texas law; and (3) whether the other party to the agreement (aside from plaintiff) was a Texas resident. Dkt 28 at 9. Although RapidDeploy cites no authority in support of these factors, it apparently relies on *BeautiControl, Inc. v. Burditt*, No. 3:01CV0744-M, 2001 WL 1149360, at *13 (N.D. Tex. Sept. 26, 2001). Dkt. 28 at 10. In *BeautiControl*, the court recognized that "in the abstract, the effects test seems clear," but Fifth Circuit and Northern District of Texas precedent "made any determination of personal jurisdiction utilizing the standard difficult." *Id.* Subsequent precedent has provided further insight into its application.

not governed by Texas law, and pertained to the sale of stock of a company that did no business in Texas. *Id.* at 772-73. The court further found that "the fact that [plaintiff] has its principal place of business in Texas is, as the district court put it, a mere fortuity." *Id.* at 773. Accordingly, the Court found specific jurisdiction over the defendant lacking.

Based on the precedent cited above, the Court finds that the exercise of personal jurisdiction over RapidSOS would be improper. The record does not indicate that RapidSOS expressly aimed its tortious activities at Texas, and it is undisputed that the allegedly tortious acts did not take place in Texas. *See* Dkt. 28 at 8. RapidDeploy alleges that RapidSOS threatened to poach RapidDeploy's employees, but RapidDeploy provides no evidence to connect this threat to Texas. In other words, the allegation speaks to RapidSOS's connection to the plaintiff, not the forum state. *See Sangha*, 882 F.3d at 103-04 (applying *Walden*, 571 U.S. at 290, and finding jurisdiction lacking because location of harm was "largely a consequence of [plaintiff's] relationship with the forum, and not of any actions [defendant] took to establish contacts with the forum"). Furthermore, as the court reasoned in *Southmark*, 851 F.2d at 773, Texas is not the "focal point of [defendant's] tortious conduct." For example, RapidDeploy does not allege that Murrell worked predominantly on projects related to Texas, RapidSOS targeted RapidDeploy's Texas customer base, or RapidSOS's recruiting activities were directed at Texas.

The Contract with which RapidSOS allegedly interfered also does not sufficiently connect RapidSOS to Texas. The Contract is governed by Texas law, but RapidDeploy does not allege that that Texas was the primary location of its relationship with Murrell.[4] *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003) (finding personal jurisdiction where

---

[4] RapidDeploy alleges that the Contract "was performed, in part, in Texas," but cites only the Declaration of James Mitchell, which contains the conclusory statement: "RapidDeploy also performs most of its obligations under such agreements from its headquarters in Austin, Texas." Dkt. 28 at 10; Dkt. 28-2 ¶ 5

10


Texas was "the primary location" of the business relationship between the parties to the contract); *see also Great Am. Food Chain, Inc. v. Andreottola*, No. 3:14-CV-1727-L, 2015 WL 493758, at *4-7 (N.D. Tex. Feb. 4, 2015) (denying personal jurisdiction over defendants because plaintiffs failed to show that defendants' alleged conspiracy to interfere with contract governed by Texas law "was related to or arose out of their contacts with Texas").

### 4. Other Contacts

Finally, RapidDeploy generally asserts that RapidSOS has "other contacts with Texas, including conducting business, serving customers, [and] marketing its products, among others." Dkt. 28 at 8. The Court is not required to "credit conclusory allegations, even if uncontroverted." *Panda*, 253 F.3d at 869. RapidSOS submitted evidence that it lacks such contacts. *See* Unsworn Declaration of Benjamin A. Schoener, Dkt. 9-2. Even if these allegations were sufficient, RapidDeploy does not argue that the cause of action arises out of them.

## C. Conclusion

For the foregoing reasons, the Court finds that RapidDeploy has failed to establish the requisite minimum contacts to support specific jurisdiction in Texas. Accordingly, the Court need not examine whether exercising specific jurisdiction over RapidSOS comports with fair play and substantial justice. *Panda*, 253 F.3d at 870. The undersigned Magistrate Judge recommends that the District Court dismiss RapidSOS from this case and dismiss as moot the motion to remand, in which RapidSOS argued that the Court lacked subject matter jurisdiction due to the inclusion of a non-diverse defendant.[5]

---

[5] For a federal court to have subject matter jurisdiction under 28 U.S.C. § 1332, there must be complete diversity of citizenship, which "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (citation omitted). Although complete diversity was lacking at the time of removal, there is complete diversity between the remaining parties – RapidDeploy and Murrell – because RapidDeploy is a citizen of Delaware and Texas and Murrell is a citizen of Montana. Dkt. 4 at 2.

## IV. Request for Jurisdictional Discovery

RapidDeploy asserts that it has a right to jurisdictional discovery to further respond to RapidSOS's arguments. RapidDeploy seeks leave to serve five requests for production and three interrogatories on RapidSOS and to depose Mejía and a second corporate representative for four hours each. Dkt. 30 at 3. RapidSOS responds that RapidDeploy has neither made a preliminary showing of personal jurisdiction nor identified what facts it expects to discover supporting jurisdiction. RapidSOS further argues that the requested discovery is overbroad and not relevant to personal jurisdiction.

To support a motion for jurisdictional discovery, a plaintiff first must make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing does not require proof that personal jurisdiction exists, but "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* (citation omitted). The plaintiff also must state what facts discovery is expected to uncover and how those facts would support personal jurisdiction. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). If a plaintiff presents factual allegations "that suggest with reasonable particularity the possible existence of the requisite contacts, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding*, 415 F.3d at 429 (citation omitted).

The district court has broad discretion to permit a party to conduct jurisdictional discovery. *Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015). A plaintiff, however, is not entitled to jurisdictional discovery when "the record shows that the requested discovery is not likely to produce the facts needed to withstand" a motion to dismiss. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F. 3d 429, 434 (5th Cir. 2014) (citation omitted). Discovery on matters

of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. *Kelly*, 213 F.3d at 855.

RapidDeploy alleges that the discovery will further establish "Mejia's activities consistent with this threat to harm RapidDeploy by hiring away its best employees and his involvement in following through with these threats." Dkt. 30 at 2. As previously stated, however, Mejía's communications are not the tortious acts at issue. RapidDeploy does not specify what other facts it expects to uncover or how the information will support the exercise of personal jurisdiction. Accordingly, RapidDeploy has not made a preliminary showing of personal jurisdiction, and the Court recommends that its request for jurisdictional discovery be denied.

## V.  Recommendations

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court:

1. **GRANT** Defendant RapidSOS, Inc.'s Motion to Dismiss Under Rule 12(b)(2) of the Federal Rules of Civil Procedure (Dkt. 9) and **DISMISS** RapidSOS;

2. **DENY** Plaintiff RapidDeploy, Inc.'s Emergency Motion for Remand and for Award of Attorneys' Fees and Costs (Dkt. 7);

3. **DENY** Plaintiff RapidDeploy, Inc.'s Motion for Jurisdictional Discovery (Dkt. 30); and

4. **DENY** Defendant RapidSOS, Inc.'s Request for Judicial Notice (Dkt. 35).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## VI.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 1, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE